## MURRAY VS. MENEFEE.

When the County Court has once granted the privilege of keeping a public ferry, the privilege is exclusive within the distance, and subject to the restrictions mentioned in the 20th section of the Statute, (*Gould's Dig.*, *chap.* 70,) so long as it is exercised under the annual grant of license provided for.

In this country there seems to be no precise legal definition of the term "town," and it is supposed to have been used in the statute, (*sec.* 20, *chap.* 70, *Dig.*,) in its popular sense: Proof, that at "Cadron," the courts for the county were held from 1826 to 1828, but never afterwards; that it was never incorporated; that it was abandoned in 1831, and continued abandoned until 1845 or 6: that in 1855 there was one store doing business to the amount of $4,000 per annum; dwelling house for two families, and out-houses; that the population consisted of two families, numbering six persons; one warehouse from which produce was shipped, varying in value from $200 to $1500 per annum—To call this a town would be an obvious misapplication of the term.

The grant of an exclusive ferry franchise under the 26th section of the statute, at a place where a public road crosses a "private stream, the bed of which may belong to any individual," so as to prevent other individual proprietors of the bed of the stream, above or below, from materially impairing its value by affording facilities of crossing to the public, is not an appropriation of private property to public uses; but a mere inhibition upon the use of one's property in such manner as to interfere with the vested rights of another.

A ferry franchise is the creature of sovereign power, and no one can exercise it without the consent of the State, and when granted in terms exclusive, the law takes care that the grant shall not be violated; and if it be, a court of chancery may be successfully resorted to.

In granting or refusing a ferry privilege, the County Court acts judicially, and its judgment is binding and conclusive on all persons who had no other than a public interest in the proceeding; but the judgment does not conclude the rights of any one whose private interest has been invaded, unless by voluntary appearance—he is under no legal obligation to appear—he made himself a party to the proceeding.

*Appeal from Conway Circuit Court in Chancery.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

WILLIAMS & WILLIAMS, for the appellant.

Public ferries are purely of legislative creation, and a matter of regulation in the United States; (1 *Nott & McCord* 387,) and therefore, when the Legislature grants a ferry privilege directly, or by vesting a discretion in a particular tribunal, it is conclusive.

A court of chancery cannot set aside a ferry grant from the Legislature although obtained by fraud.

The test of the proper exercise of the discretion of the County Court, is public convenience in licensing several ferries over public streams, and that discretion must be controlled by a direct proceeding by appeal or certiorari.

The act (26th section of the statute) is inoperative and void, because it does not make provision for compensation to the owners of the bed of the river. All laws taking private property for public laws without compensation, are void. 8 *Eng.* 198; *Ang. on Water courses, sec.* 457, 461, 466.

JORDAN for the appellee.

In order to entitle the appellee to the relief sought, two facts were essential: *first*, that his ferry was previously established; and *second*, that it was not near any town or city, where the public convenience required the establishment of a rival ferry; and both of these facts are proven in the case.

The question whether the State has a right to take private property for public use does not arise in this case. Neither the act, nor the decree of the Court below affects the title or possession of the appellant to his land—the decree does not condemn his land to public use, nor vest the title of any part of it in the appellee, but merely restrains the appellant from using it to the injury of appellee. The precise question here to be determined is, not whether the State can take private property for public use, but whether it has the power under the constitution, so to regulate the establishment of ferry privileges, that when one is established another shall not be kept within one mile, unless it comes within the exception of the statute. The

principle is fully sustained by the common law.  3 *Bl. Com.* 219; 3 *Kent Com.* 411 *and notes;* 5 *Pick.* 199.

HEMPSTEAD, also, for appellee.

Mr. Justice COMPTON delivered the opinion of the Court.

The bill in this case was brought to prevent the infringement of a ferry privilege.

The appellee, William N. Menefee, under a license granted by the County Court, established a ferry at a point where the military road, leading from Little Rock to Van Buren, crosses Cadron Creek, in Conway county.  After the ferry of the appellee was established, and had gone into operation, John Murray, the appellant, also procured a license from the County Court, and established a ferry on the same stream, within one mile of that of the appellee.

The proof shows that the ferry of the appellant had the effect to divert, and did divert, a portion of the traveling public from the ferry of the appellee.  The prayer of the bill was, that the license granted to the appellant be canceled, and he restrained from the further use of his ferry, and the Court below so decreed.

The Legislature, with a view to the public convenience, has conferred on the County Court the power to grant ferry privileges.  The 1st section of the act provides that all ferries over any public navigable stream in this State, shall be deemed public ferries.

By sections 7 and 11, it is provided, that any person wishing to establish a ferry, shall apply to the County Court, and on showing that he is in possession of the land where the ferry is sought to be established, and that its establishment will promote the public convenience, the court shall grant him a license for the term of one year.  When the license has been so granted, and the ferry once established, it is made the duty of the County Court to levy a tax on the privilege annually thereafter, whether application for a renewal of the license be made or not; and the duty of the clerk to issue, annually, a license, and deliver it to the sheriff for the person to whom the privilege

was granted, who, on presentation of the license, is bound to pay for it. · See *secs*. 15, 16, 17, 18, 19. And the 20th section provides, that the County Court " shall not permit any ferry to be established within one mile above or below any ferry previously *established*, except at or near cities or towns, where the public convenience may require it, and satisfactory proof of the same shall be first adduced. *Gould's Digest, ch.* 70. The obvious construction of these provisions is, that when the County Court has once granted the privilege of keeping a public ferry, the privilege is exclusive within the distance, and subject to the restriction mentioned in the 20th section, so long as it is exercised under the annual grant of license provided for by the statute. It is a private vested right which the law will not suffer to be infringed by a rival ferry, unless the public convenience require it; and not even *then*, except " at or near cities or towns."

The establishment of a public ferry is not unfrequently attended with heavy expenditures. Under our statute the grantee is held to a strict performance of certain duties imposed by law, and subject to penalties if he neglect them. By making the privilege to some extent exclusive, the Legislature, doubtless, intended to subserve both private rights and public interest. Was there a town at or near the ferry of the appellant?

In this country, there seems to be no precise legal definition of the term " town," and we suppose it was used in the statute in its popular sense. In the case before us, the proof is substantially the following: The place claimed to be a town is designated " Cadron," situate on the Arkansas river, below the mouth of Cadron Creek; the courts for Conway county were held there from 1826 to 1828, but never afterwards; in the language of the witness, it was " abandoned" in 1831, and continued " abandoned" until 1845 or 6. In 1855—when the ferry was established—there was at " Cadron" one store, which did business to the amount of about $4,000 per annum; dwelling house for two families, and out-houses; the population consisted of two families, numbering in all, six persons; one ware-

house, from which, in 1855, produce to the value of $200 was shipped, the trade of that year being injured in consequence of drouth and low water. In 1854—which was a favorable year —the exports amounted to the value of about $1,500. To call this a town, in any sense, would be an obvious misapplication of the term· The appellant having failed, then, to show the existence of a city or town, at or near his ferry, any enquiry as to the public convenience becomes immaterial, as both of these must concur to authorize the establishment of a rival ferry. *Vide Cloyes et al. vs. Keatts,* 18 *Ark.* 22.

It is contended for the appellant that Cadron, not being a public navigable stream, within the purview of the statute, the establishment of the appellee's ferry, under the order of the County Court, vested no exclusive right, and did not, therefore, preclude the appellant from establishing his ferry under a like order; and that if such was the intention of the Legislature, it was, in effect, an appropriation of private property to public purposes, which could not be done without compensation to the owner. The reverse of this proposition we understand to be the law. The 36th section of the statute expressly provides, that where a public road crosses a " private stream, the bed of which may belong to any individual," the County Court, if, in their opinion, the public convenience would be thereby promoted, may make an order declaring such crossing to be a public ferry, and " when so declared, such ferry shall be and remain a *public ferry* during the pleasure of the court, and be *subject to all the regulations and restrictions that are made by this act applicable to public ferries on navigable streams.*"

It is conceded in argument that the owner of a ferry, provided for by this section, is held to the performance of the *duties,* and is subject to the *penalties* incident to ferries across navigable streams, and we see nothing in the statute which would warrant a denial of the *exclusive right,* also incident to that class of ferries.

The grant of an exclusive ferry franchise to the appellee, so as to prevent other individual proprietors of the bed of the

stream above or below him, from materially impairing its value by affording facilities for crossing over the traveling public in violation of the grant, was not an appropriation of private property to public uses. It was a mere inhibition upon the use of their own property in such manner as to interfere with the vested rights of another, imposed by law, in regulating the public highways. Nothing was taken from them, because a ferry franchise being the creature of sovereign power, no one can exercise it without the consent of the State, and when, pursuant to regulations prescribed by the Legislature for the general good, it is granted in terms exclusive, the law takes care that the grant be not violated, and its value impaired; and that a court of chancery may be successfully resorted to, in such cases, is now too well settled to admit of discussion. *Croton Turnpike Co. vs. Ryder*, 1 J. C. R. 611; *Livingston vs. Van Ingen*, 9 *Johns. R.* 507; *Charles River Bridge vs. Warren Bridge*, 11 *Pet.* 428; *Benson vs. Mayor of New York*, 10 *Barb.* 224.

As a further ground of defence, the appellant relies on the judgment of the County Court granting him a ferry license, as an estoppel, and contends that it cannot be reviewed collaterally and set aside forever.

That the judgment, if it were binding on the appellee, could not be enquired into collaterally and impeached for error, is not denied. But was it binding? To determine this question, it is necessary to ascertain the true character of the proceeding in which the judgment was pronounced. The statute, as we have seen, provides, that any person wishing to establish a ferry, " shall apply to the County Court, and on showing that he is in possession of the land where the ferry is sought to be established, and that its establishment will promote the public convenience, the court shall grant him a license. The mode of the application—whether by petition or motion—is not indicated, nor does the statute require that notice, special or general, of the application or proceeding, shall be given by publication or otherwise. Now, it is not pretended that this is a proceeding *in personam;* nor is it a proceeding *in rem*, in that

sense which makes all the world parties to it, for, besides, wanting the characteristics which distinguish a proceeding strictly *in rem,* '(*vide Mankin vs. Chandler & Co.,* 2 *Brocken-brough's Rep.* 125; *Sturdy & Wife vs. Jacoway et al.,* 19 *Ark.* 515,) it may be safely asserted that the Legislature never designed to make the action of the County Court conclusive of the private rights of the citizen without providing, in some measure, for notice of the proceedings by which these rights were destroyed, thus depriving him of his property without even the opportunity of being heard.  An application under the statute for a ferry privilege, is an *ex parte* proceeding.  In granting or refusing the privilege, the court acts judicially, and its judgment being pronounced in a matter touching the public convenience, however erroneous, is binding and conclusive on all persons who had no other than a public interest in the proceeding, held in common with the rest of the community, and upon this principle it is, that a party possessing a public interest merely could not question the proceeding, even *directly,* by appearance in the County Court, 24 *Ala.* 282; but the judgment does not conclude the rights of any one whose *private* interest—by which is meant an interest in property, something capable of individual ownership, which relates to him separately, and exists as a private right, which he, as an individual may vindicate—has been invaded by it; unless by voluntary appearance in the County Court, he made himself a party to the proceeding.  There is no proof in the record that the appellee did so appear, and consequently his rights were not concluded.

The decree of the Court below must be affirmed with costs.


Mr. Justice RECTOR, dissenting.

I dissent entirely from the opinion of a majority of the Court in this cause.

And the points evolved touching the public franchise as well as high constitutional rights of the citizen, I deem it proper that I express what conclusions I have arrived at.

Preliminary, however, to an examination of the case, upon

its merits, I will advert to the question of jurisdiction, relied on to some extent by counsel.

*Section 5, Article 6*, of the Constitution, provides: that the Circuit Courts, possessing equity powers, shall exercise superintending control "over the County Courts." Leaving the peculiar mode, in which such superintending control was to be exercised, to be subsequently defined by the Legislature.

*Sec. 15, chap. 49, Gould's Dig.*, provides: "that the Circuit Courts shall have appellate jurisdiction from all orders and judgments of the County Courts, in all cases, not exclusively restricted to the jurisdiction of County Courts, nor expressly prohibited by law."

Conceding that the case here does not belong to that class, which is exclusively restricted to the jurisdiction of the County Courts, of which serious doubts may well be entertained, the statutory regulation, although declaratory of the constitutional power conferred upon the Circuit Courts, must be held as restrictive of the powers incident to Courts of Chancery upon their creation.

The Legislature, in the frame-work of the judicial department of the government, has, for reasons obviously promotive of the public good, conferred upon the County Courts composed of magistrates, chosen from each and every township in the county, exclusive, original jurisdiction of all local, domestic affairs; amongst which is the power to grant the public franchise to individual proprietors for the establishment of ferries.

The Circuit Courts have not concurrent, original jurisdiction touching these local questions, but, by the constitution, "superintending control" — powers of revision — only, and by the statute, those powers are to be invoked by appeal.

What is the case here?

The appellant and appellee, each, obtained from the County Court a license to keep a ferry. Menefee, the appellee, conceiving his rights infracted by the granting of Murray's license files an original bill, praying the cancellation of appellant's license, and for injunction, etc. New proof was taken in great

abundance—a new case made, and heard *de novo*, and, in the absence of the original proceedings of the County Court, which ought to have been the foundation of the suit before the Circuit Court, and brought there by appeal or certiorari.

The Circuit Court having no original, but only appellate jurisdiction, has no power, either to grant, or annul ferry license, but, by " superintending control," to correct error, and remand the proceedings of the County Court, with directions.

The bill, in the form presented, ought, therefore, to have been dismissed summarily, with costs.

It was mainly, however, resisted upon other, several, grounds. And first: It is insisted by the appellant that the action of the County Court, granting license to him, is conclusive against Menefee by estoppel. And this, in the view I take of it, is correct.

The Cadron, over which these ferry rights are granted, is not, by the laws of the United States, a " navigable stream." By the plat shown in the transcript, it was not meandered, but returned by the surveyor, and sold by the government to individual proprietors, without reserve, as land, unaffected by the retention of riparian rights to the government.

The State Legislature has, however, by special enactment, declared the Cadron to be a navigable stream, that is, that the bed of the stream, derived in fee from the United States by the owners, shall be condemned to public uses, and converted from private property into a public franchise.

Has the Legislature the power to do this? and, if so, what is the process?

Certainly, individual rights must yield to public good; which is conceding quite enough. But the appropriation of private property to public uses, is only tolerated by the constitution after the citizen is fully compensated for his loss.

The act of the Legislature, therefore, as to the right of Murray or Menefee (neither having received indemnity), declaring Cadron a navigable stream, is unconstitutional and void. And the stream, with all the rights incident thereto, so far as affected

36

by that act, remains private property — the right to ferry
or transport persons, a private right, not a public franchise,
subject to be granted or withheld by the county courts, nor any
other department of government, until full compensation for
damages, if any, shall have first been made.

For there can be no " public franchise where there is no
public right," and although it is clearly within the power of
the government, if necessary for the public good, to create
such like franchise, yet, if so created, the constitution rewards
the citizen by damages.

But a step farther on this point of enquiry, that it may be
ascertained whether the County Court, in granting the license
to Murray, affected the private rights of Menefee, or granted
only a public franchise, in which he had no private interest.

The roads passing over both the ferries are public highways,
made so by the action of the County Court.

And section 20, of the ferry law, as now codified, declares
that, " where a public road crosses any private stream, which
has not been meandered as a. navigable stream," the bed of
which belongs to any individual, the County Court may make
an order declaring it to be a public ferry.

Here, then, is a case precisely in point.

The Cadron is a private stream; its bed private property.
But the public highway passing over it, of itself, and without
an especial order of court, appropriates it to public uses.

And thus the ferry privilege became a public right—a fran-
chise to be disposed of annually in such wise as mostly con-
duced to public good.   And it is to be observed, that in cases
wherein it becomes necessary to project a public road over pri-
vate lands, the statute, *sec. 52, chap.* 149, *Gould's Dig.,* awards
indemnity to the owner.

The question now recurs, viewing the ferry privilege, granted
Murray, in this case, a public franchise, whether or not the
action of the County Court, granting the license to Murray, is
conclusive against Menefee.   For although the right granted, is
in the nature of a public franchise, yet Menefee had the con-

stitutional right to become a party to that proceeding, as any other citizen might have done, by petition or remonstrance. And, notwithstanding, from the circumstances of the case, it must be presumed that he had notice of the proceeding of the Court granting license to Murray, yet he saw proper to forego this privilege, and suffer judgment to go without making any opposition whatever.

*Section* 20, *Art. 2d,* of the Constitution of this State, provides that the citizen shall have a right to apply to those invested with the power of the government, for redress of grievances, by address or remonstrance; and I can perceive no reason why this right may not as well be exercised before the judicial, as any other department of the government.

But the granting the license to Murray, it is held, invaded the private rights of Menefee, and, as he was not a party, is not conclusive against him. He, it is held, had, by the previous establishment of his ferry, acquired perpetual and exclusive right. So that, no matter what the public exigencies might be, unless there was a town, the public convenience could not be conserved by the creation or establishment of another ferry within a mile of the first.

*Section* 20, *chap.* 70, *Gould's Dig.,* reads as follows: " The county courts of the several counties of the State shall not permit any ferry to be established within one mile above or below any ferry previously established, except at or near cities and towns, where the public convenience may require it, and satisfactory proof of the same shall be first adduced," and a misconception of the true import of which, lies at the bottom of this controversy.

Upon an inspection of the record, it will be perceived that the licenses to Murray and Menefee were granted upon the same day, to continue for the same time, and taxed at the same rate, $20, each. They were granted the 2d January, 1855. True, Menefee had obtained license for a series of years preceding, but that gave him no rights for the year 1855, and I take it, that the meaning of the above section is, that if A, by

license from the proper authority, establishes a ferry for a year, the time prescribed by law, to-day, B cannot to-morrow, or at any time within the year, establish another within the mile, etc. In other words, that ferry rights are established, and evidenced, by the license or authority derived from the County Court. And upon the expiration of the license, cease to exist altogether, unless again renewed, as the law directs.

It follows, that on the 2d January, when the Court granted Murray's license, Menefee's having expired, that the latter had no subsisting private right affected by the judgment, which would entitle him to review it collaterally. Hence, upon that ground, also, he is concluded.

Besides this, Murray sets up that there was, or is a town near his ferry—that the public convenience is promoted by the establishment thereof, and proves, to my satisfaction, the allegations abundantly.

How many people shall be necessary to constitute a town, the statute does not undertake to say. But I regard the terms merely descriptive, and not an indispensable pre-requisite, when, in the discretion of the County Court, public convenience greatly demands a ferry.

In this case, there is a name, habitations, and a place containing more or less inhabitants—a store, warehouse, shop, etc., which are sufficient, in Arkansas, to bring it within the provision or description of a town.

The Court below, then, erred, both upon the questions of law and the facts, and imposed upon Murray restrictions which amounted to a disfranchisement of his rights, and the rights of the citizens of Conway county.