MUNN *v.* SHULTS.

Opinion delivered July 9, 1917.

1. FERRIES—ABANDONMENT OF RIGHT.—The right to operate a public ferry may be abandoned after payment of the license fee, by a failure to provide necessary facilities and to exercise the right.

2. FERRIES—CONTINUATION OF RIGHT.—When the right to operate a public ferry is once established by proper franchise, the right continues until revoked by the county court.

3. FERRIES—LICENSE.—The license fee for the operation of a public ferry must be paid annually, and this duty can not be waived by the derelictions of county officials.

4. FERRIES—IMPROPER OPERATION.—Appellant *held* to have abandoned his right to operate a public ferry, and to be liable for penalties denounced by law for the improper operation of the same.

Appeal from Miller Circuit Court; *George R. Haynie,* Judge; affirmed.

*Henry Moore, Jr.,* and *D. W. McMillan,* for appellant.

1. When this cause was here before (124 Ark. 415) the only question was the interpretation of Kirby's Digest, § 3570.

A ferry privilege once granted may be revoked by proper order. 95 Ark. 344. But until revoked the privilege continues, and it is the duty of the ferryman to pay the tax each year. Kirby's Digest, § § 3558-3561 to 3582.

2. It is shown that during 1913 the county court levied a $25 tax on ferry privileges, Kirby's Dig., § 3570, but the clerk did not immediately issue the license to Munn as required by law, *Ib.,* § 3571, nor did the sheriff present the license within twenty days. *Ib.,* § 3572. Defendant should not have been mulcted in damages, for a failure to pay when the failure was caused by officials failing to perform their duty.

3. The franchise is for the benefit of the public, and carries the burden of operating the ferry until relieved by order of court. The license is also a tax for the benefit of the public, and the failure to pay such tax does not relieve the grantee from the burden of operating the ferry.

Kirby's Digest, § § 561-566; 44 Ark. 188. The ferryman's duty is to pay the annual tax on presentation by the sheriff. 20 Ark. 563, 579.

4. The privilege is not to be procured annually, but remains valid until revoked; the only duty being to pay the fee. *Ib.* 580. See also 25 Ark. 27; 95 *Id.* 344, 353.

5. No abandonment was shown. 116 Ark. 103. See 105 *Id.* 316; 119 *Id.* 240.

6. The statute is highly penal and must be strictly construed. 70 Ark. 331; 79 *Id.* 521; 118 *Id.* 273.

Defendant complied with the law and was not liable to the penalties. *Supra.*

7. Douglas' and Shults' testimony was incompetent. Exhibit "A" was not the original record and inadmissible.

*Will Steel,* for appellee.

1. Appellant waived all objections to the introduction of exhibit "A," to the testimony of T. D. Douglas. The ruling of the court is not set up as a ground for new trial. 70 Ark. 429; 86 *Id.* 486; 117 *Id.* 208; 92 *Id.* 599. But it was admissible was a contemporaneous record and was as much an original as the memoranda. 14 Wall. 375; 81 U. S. 894.

Kirby's Digest, section 3582, provides for the penalties to be collected. The proper foundation was laid and the record was read to refresh the witness' memory. 2 Wigmore on Ev., § 1560; 14 Wall. 375; 81 U. S. 894; 63 Ark. 204; 65 *Id.* 321; 57 *Id.* 415; 60 *Id.* 342; 17 Cyc. 377, 384, 386, 395, 400; 16 *Id.* 946.

2. Appellant waived his objection to the testimony of J. B. Shults for the same reason. 70 Ark. 429; 86 *Id.* 486; 117 *Id.* 208; 17 Cyc. 474.

3. The presumption is that the court only considered competent testimony. 76 Ark. 156; 78 *Id.* 209.

4. The conclusions of the lower court can not be reviewed here. There were no exceptions to the findings of fact or law. 70 Ark. 420; 60 *Id.* 258.

5. Defendant was plainly liable under the law. Kirby's Digest, § § 3582, 5558, 3566-70-71-2, 3579.

6. The contention that the clerk forgot to issue the license, is an afterthought. Munn would never have paid a license for 1913 but for the institution of this suit. No request was made for one. Munn had no boat in 1912 and paid no license; he did not use the ferry privilege during its life. On January 6, 1913, there was no boat at Buzzard's Bluff; Munn was not exercising his ferry privilege there, and there was no road leading to the ferry. Kirby's Digest, § 3570; 95 Ark. 354.

The evidence shows Munn had abandoned his ferry privilege and failed to pay the tax for 1913 and 1914. 25 Ark. 29; 20 *Id.* 561; 95 *Id.* 354; 20 *Id.* 573; 94 *Id.* 190. A ferry privilege is not perpetual. 23 Ark. 514. See also 116 Ark. 102.

A license must be procured before a ferry can be kept. Kirby's Digest, § § 3582, 3558. The operation of a ferry in the years 1913 and 1914 was a violation of law by Munn and he is liable.

### STATEMENT BY THE COURT.

The appellee, plaintiff below, instituted this suit against the appellant, the defendant. Plaintiff alleged that from the 31st of December, 1912, until the 31st of December, 1914, he was duly licensed by the county court of Miller County, Arkansas, to operate a ferry across Red river between Miller County and Fulton in Hempstead County; that he complied with all requirements of the law, and under a license duly obtained operated the ferry during the time mentioned; that during said time the defendant Munn unlawfully and wrongfully, without license, operated a ferry across Red river in Miller county from a point known as Buzzard's Bluff, seven miles south of Fulton and during that time ferried across Red river 959 persons, wagons and articles contrary to law, for which he charged and collected money; that the defendant Munn, under the provisions of section 3582 of Kirby's Digest, upon which plaintiff predicated his suit,

was due plaintiff the penalties incurred under that section, amounting in the aggregate to the sum of $4,295.00, for which he prayed judgment.

The defendant admitted that the plaintiff had complied with the requirements of the law authorizing him to operate a ferry between Miller County and Fulton in Hempstead County. He denied all the other material allegations of the complaint, and alleged that he had paid to the sheriff of Miller County the license required by Miller County for the years 1913, 1914 and 1915, and prayed that the plaintiff take nothing and that defendant have a judgment for his costs.

The cause was, by consent of the parties, tried by the court sitting as a jury.

The court made written findings of the fact as follows: "That during the years 1913 and 1914 the plaintiff, J. B. Shults, had been licensed by the county court of Miller County, Arkansas, to establish and operate a public ferry across Red river in said county opposite Fulton and had paid license fee required therefor, and had during said year operated his said ferry.

"That during the years 1913 and 1914, beginning the first week in February, 1913, up to and including April 24, 1914, the defendant M. J. Munn owned and operated in the county over the same navigable stream, Red river, his public ferry without complying with the provisions of law in relation to obtaining license, and that during said time he ferried over said river at said point persons for whom he charged money in the number exceeding eight hundred and fifty-nine, and that during said time he ferried over said river at said point wagons for which he charged money in a number of five hundred and eighty-two, and that during said time he ferried over said ferry mules, horses and cattle for which he made separate charges, in a number exceeding twelve hundred, and that the said J. B. Shults, on that account, is entitled to judgment, as provided in section 3582 of Kirby's Digest, for penalties in the amount of $4,295.00; that in October, 1912, M. J. Munn, upon application to the county court of

Miller County, Arkansas, obtained a license to operate a public ferry at Buzzard's Bluff, in Miller county, Arkansas, across Red river, which order granting said privilege expired on the 31st day of December, 1912; and that said Munn, in October, 1912, obtained a license to operate said ferry from the county clerk of said county, and paid the license fees required by law, said license expiring on the 31st day of December, 1912; that during the year 1912, and up to the first week in February, 1913, the said M. J. Munn did not own and operate a ferry at said point on said river, and during said time did not use said ferry privileges, and that up until the latter part of January, 1913, that there was no public road leading from the county road down to the point of the landing of said ferry, nor up until said time was there a public road crossing said river at said point in Miller County, Arkansas.''

The court further found that ''Munn did not after October, 1912, in any way apply for the privilege of operating said ferry, nor did the county court of Miller County, Arkansas, grant him at any time thereafter the privilege of operating said ferry at said point in Miller County, nor did the said county court assess any tax against a ferry privilege of M. J. Munn after October, 1912, nor did said county clerk issue a license to M. J. Munn as ferryman after October, 1912, until October 17, 1914. That October 17, 1914, after suit had been brought by J. B. Shults against M. J. Munn to collect said ferry penalties, which suit was then pending, the said M. J. Munn, through his attorneys, orally requested the county clerk of Miller County, Arkansas, to issue to the said M. J. Munn ferry licenses, authorizing him to operate said ferry for the years 1913 and 1914, and that after a delay the clerk did issue said license but that no orders of the county court were made during said years granting to the said M. J. Munn the privilege of operating said ferry, nor was said ferry privilege assessed by said court during said years as a basis therefor; that on October 17, 1914,

the said M. J. Munn paid to the collector of Miller County, Arkansas, the license fees for the years 1913 and 1914.''

Upon these facts the court declared the law to be that it was the duty of Munn, during the year 1913, and during the year 1914, and prior to April 25th thereof to apply for and obtain an annual license authorizing him to operate the ferry, and having failed to do so he incurred the penalties prescribed under section 3582 of Kirby's Digest, and that J. B. Shults was entitled to judgment in the amount prayed for in his complaint; that by reason of the failure of Munn to procure a ferry boat, or in any way use his ferry privilege granted him in 1912, and prior to February, 1913, he abandoned such privilege and also abandoned said privilege by failing to obtain the annual license prescribed by the statute for the year 1913, and the year 1914 prior to April 25th thereof, the time when his agent, Douglas, ceased operating the ferry, and that under the facts the licenses for the years 1913 and 1914 issued to M. J. Munn in October, 1914, could not avail Munn as a defense.

The court thereupon rendered judgment in favor of the plaintiff against the defendant in the sum of $4,295.00, from which this appeal has been duly prosecuted. Other facts stated in the opinion.

WOOD, J., (after stating the facts). Appellant objected to the introduction of a book kept by T. O. Douglas, showing the names, dates and amounts collected from various persons and articles while he was operating the ferry for Munn; and also objected to the testimony of the appellee J. B. Shults based upon the entries in the book kept by Douglas which was introduced in evidence. It does not appear that these objections were carried into the motion for a new trial. They were therefore waived in the court below and can not be considered here. *Choctaw & Memphis R. Co.* v. *Goset,* 70 Ark. 429; *Mitchell* v. *State,* 86 Ark. 486; *King* v. *Black,* 92 Ark. 598; *Railways Ice Co.* v. *Howell,* 117 Ark. 198, 208.

Appellant concedes that the ''facts are practically undisputed.'' It will be seen from the above findings of

fact by the court that the county court of Miller County, in October, 1912, granted Munn the privilege of operating a ferry across Red river at the point designated, which privilege, under the order granting the same, expired on the 31st of December, 1912; that the license which Munn was required to pay for exercising the privilege during that time was paid. But the court also found that Munn did not own and operate a ferry during the year 1912 and up to the first week in February, 1913, did not use his ferry privilege; that up until the latter part of January, 1913, there was no public road leading from the county road down to the point of the landing of the ferry; nor until said time was there any public road crossing the river at said point in Miller County, Arkansas. The court further found that Munn did not, after October, 1912, in any way apply for the privilege of operating a ferry, nor was he after that time granted the privilege of operating the ferry at the designated point.

These findings of fact by the court are sustained by the evidence. It thus appears that the ferry was never established under any order of the county court granting the privilege to establish the ferry at the point designated. Appellant allowed the privilege and the license to expire without establishing the ferry in accordance with such order of the county court granting same and never thereafter sought, nor was he granted by the county court, the privilege of operating a public ferry at Buzzard's Bluff, in Miller County, Arkansas.

(1) Ferry privileges are granted because of the public convenience subserved thereby. A ferry is not established merely by applying for and obtaining a license for operating the same. To establish a ferry one must go further and provide the facilities and operate the same for the public before it can be said that the ferry is established. So here, although the findings of the court show that Munn had applied for and had been granted the privilge and had obtained his license for operating a ferry for the year 1912, the findings of the court nevertheless show that he did not establish the ferry by provid-

ing the necessary facilities and operating the same until the period had expired for which his license was granted. Therefore, the order of the county court levying a tax on the 6th of January, 1913, of $25.00 for the privilege of operating ferries in the county of Miller did not apply to Munn and he was not at that time, under the law, subject to the payment of the tax, for the law expressly declares that "no ferry at which the public county road does not cross shall be subject to the tax herein provided." And the findings of the court show that on January 6, 1913, when the tax was levied there was no public road leading from the county road down to the point of the landing of said ferry, nor was there a public road crossing the river at that point.

If a ferry could be established simply by obtaining the order of the county court granting the privilege and by obtaining the license, but without actually providing the facilities and putting them in operation for the use of the public, then the purpose of the law, which is to promote the public convenience, would be wholly frustrated, for after the privilege is granted and the ferry established the county court is expressly prohibited from permitting any ferry to be established within one mile above or below any ferry previously established.

In *Murray* v. *Menefee*, 20 Ark. 561, 563, it is said: "When the license has been so granted, and the ferry once established, it is made the duty of the county court to levy a tax on the privilege annually thereafter, whether application for renewal of the license be made or not; and the duty of the clerk to issue, annually, a license, and deliver it to the sheriff for the person to whom the privilege was granted, who, on presentation of the license, is bound to pay for it." And in *Lindsay* v. *Lindley, Id.* 573, 581, it is said: "Because, after the appellee's ferry was once established, the question of public convenience was no longer an open one between him and the appellant, subject to investigation on the occasion of each annual grant of license thereafter; nor, in such case, does the statute require the owner of a ferry privilege to make a further

application. It is made the duty of the court to levy a tax on the privilege, annually, whether the owner makes application or not; the clerk is required to issue the license, deliver it to the sheriff, and the owner is bound to pay for it.''

Now since no ferry was established by appellant under the order of the county court granting him the privilege and under the license obtained for exercising such privilege, he cannot invoke in his defense the statute, and the above decisions based thereon, requiring the county court to levy a tax, and the clerk to issue the license, and the sheriff to present the same to him, regardless of whether or not he renewed his application for the ferry privilege and license. These duties are exacted of the county officials named only when the license has been so granted and the ferry once established. *Independence County* v. *Duffey*, 95 Ark. 354.

Here, as we have seen, while the license was granted in 1912, the ferry was never established under it, and it was not being maintained and operated as a ferry when the county court, on the 6th of January, 1913, made a general order levying a tax of $25.00 for ferry privileges.

(2-3) It seems to be the doctrine of our cases that when a ferry franchise is once granted and the ferry is established under it, the privilege continues subject to the power of the county court to discontinue the same when the public interests demand it. Before one can exercise the privilege the right must be extended to him by the proper authority—the county court. See *Murray* v. *Menefee, supra; Bell* v. *Clegg*, 25 Ark. 26. Therefore, even though appellant had established the ferry under the franchise granted by the county court, he could not after his annual license expired continue to exercise the privilege "without complying with the provisions of law in relation to obtaining license." The derelictions of county officials in failing to issue the annual license and to levy and collect the tax therefor, can not exonerate the holder of a ferry franchise for a failure to pay the annual license

fee or tax, nor exempt him from the penalties denounced by section 3582, *supra,* for such failure.

(4)    Although the franchise may be granted and the provisions of the law in regard to obtaining license complied with, the privilege is one that may thereafter be lost by a failure to establish the ferry and exercise the privilege, or it may be abandoned by failure to procure the license prescribed by the statute. In *Finley v. Shemwell,* 94 Ark. 190, we announced the law as follows:

"It is settled by the decisions of this court that, while ownership of lands on one or both sides of a navigable stream entitles the owner to the privilege of keeping a public ferry, the right can not be exercised without procuring a license from the county court. It has also been decided by this court that when the county court has once granted the privilege of keeping a public ferry the privilege is exclusive within the distance, so long as it is exercised under the annual grant of license provided for. There may, however, be an abandonment of the ferry privilege by failure to procure the license prescribed by statute; or the county court may, by proper order, discontinue a ferry once established." Citing all former cases.

Now, under the doctrine of these cases, and the facts of this record as found by the trial court, which are sustained by the evidence and is practically undisputed, the court was correct in his conclusion of law that Munn, by reason of his failure to procure a ferry boat and use the ferry privilege granted him in 1912, and by failing to obtain the annual license prescribed by the statute for the years 1913 and 1914, had abandoned his ferry privilege, and that the license issued in October, 1914, for the years 1913 and 1914 could not avail him as a defense to this action.

Appellant, by keeping the ferry and charging persons for same without complying with the provisions of the law relating to obtaining license, incurred the penalties

denounced by the section *supra,* upon which this suit was grounded.

The judgment is therefore correct, and it is in all things affirmed.