## LINDSAY VS. LINDLEY.

When the County Court permits a ferry to be established, at or near a town, within one mile of a ferry previously established, (*sec.* 20, *ch.* 70, *Gould's Dig.*) the question, whether the public convenience required the establishment of the rival ferry, is necessarily passed upon and determined by the court.

The proprietor of an established ferry is under no legal obligation to appear before the county court and resist the establishment of a rival ferry, but if he voluntarily appears, and the proceedings are erroneous, his only remedy is to put the evidence upon the record, by bill of exceptions, and invoke the appellate jurisdiction of the Circuit Court by writ of certiorari, to quash the proceedings: otherwise the judgment of the County Court is conclusive; and he will not be heard in a court of chancery.

When in such case the ferry has been established, the question of public convenience is no longer an open one 'between the proprietors of the two ferries, subject to investigation on the occasion of each annual grant of license thereafter.

*Appeal from Lawrence Circuit Court in Chancery.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

FAIRCHILD, for the appellant.

The bill shows upon its face, that Lindsay is entitled to the relief he asks from a court of Chancery. It must certainly now be taken as an elementary proposition, that if legal relief is due, and cannot elsewhere be afforded, or if it cannot be adequately afforded, it will be extended by a court of Chancery, according to its own rules and practice.

Lindsay could obtain no relief from the courts of common law and statutory jurisdiction.

He tried by appeal, to be relieved from the decision of the county court of 1852, that founded a rival ferry within a mile of his old ferry, but he failed. What other legal remedy had

he? It is the office of a writ of *certiorari* to cause irregular proceedings to be quashed, and only for errors apparent on the record; not to look beyond the record, to ascertain the actual merits of a controversy, to control discretion, to review a finding upon facts. *Carnall vs. Crawford county*, 6 *Eng*. 61; *Pulaski county vs. Irvin*, 4 *Ark*. 487.

Lindsay could obtain no adequate relief at law.

To hold that there is no equity in Lindsay's bill, seems to me to decide that an old, well established and well conducted ferry, fully able, and always ready to cross everything to be crossed, may be exposed to the competition of a ferry less than a mile distant, that is not called for by qublic convenience, that was started without legal authority, and continued upon insufficient testimony.

At common law, an unauthorized rival ferry, so near to an old ferry as to draw away its custom, is a nuisance. 3 *Black. Comm.* 219; 4 *Kent.* 459; *Ogden vs. Gibbons*, 4 *Johns. Ch.* 160; *Newburgh Turnpike Co. vs. Miller*, 5 *Jhs. Ch.* 112.

I do not consider it necessary in this case, to trace the incidents of a ferry privilege behind our own statute of ferries.

That recognizes the right of the owner of lands, where a ferry is needed, to the use of the privilege, subject to certain provisions, intended to serve public convenience, and to its exclusive use, for a mile above and below him, unless the ferry be at or near a town, and unless the public convenience require another ferry. *Ch.* 69, *Digest—Ferries*.

The remedy at common law for a disturbance of the right of the owner of a ferry by prescription, was by writ or assize of nuisance, and in modern times by action on the case. 2 *Black. Com.*, 219–222.

But courts of chancery have concurrent jurisdiction by injunction, clear and well established, in cases of private nuisance.

The foundation of which, is the necessity of prompt and preventive relief, where immediate and great mischief would be perpetrated, or material injury be suffered, from being deprived

of the comfort and use of private property.   And this is the modern practice.   *Gardner vs. Newburgh*, 2 *Jhs. Ch.* 164; 2 *Kent*, 459.

In *East Hartford vs. Hartford Bridge Co.*, an unauthorized ferry was restrained by injunction.   10 *How.* 540.

And an injunction is the proper remedy to secure and preserve a party in the use of a statute privilege, of which he is in possession, and to which his legal title is clear.   *Croton Turnpike Co. vs. Ryder*, 19 *John. Ch.* 615; *Livingston vs. Van Ingen*, 9 *John.* 585.

It cannot be questioned that the grant of a ferry license against the remonstrance of one who claims an exclusive right against the grant, is a judicial act, affecting the interest of the remonstrant, and a law giving a County Court final jurisdiction of a judicial controversy, would be void, as opposed to section 5, article vi, of the constitution, that confers upon Circuit Courts authority to exercise a superintending control over County Courts.

That which cannot be enacted, will not be effected by construction.

Whether such exclusive jurisdiction has before been claimed for the County Courts, I know not, but the decisions of this court have proceeded upon another foundation, upon the constitutional basis of the County Court, their liability to superintendence and review.   *Roberts vs. Williams*, 15 *Ark.* 43; *Carnall vs. Crawford county*, 6 *Eng.* 604; *Trice vs. Crittenden county*, 2 *Eng.* 159; *Reiff vs. Conner*, 5 *Eng.* 241.

In *Roberts vs. Williams*, 15 *Ark.* 49, the court assign as a reason for upholding a legal proceeding, that a party had lost his right to appeal, without fault or negligence.

How could Lindsay appeal against the grant of license to Lindley in 1854, under the secret and fraudulent obtaining of such grant, narrated in the bill?

How could he quash the order by *certiorari* when no error is apparent upon the face of the proceedings, when he is not a party to them?

In *Pulaski county vs. Lincoln*, 4 *Eng*. 320, a court of chancery was successfullv invoked, to arrest the consequences of an illegal act of the County Court.

The Kentucky Statute of 1806, relative to ferries upon the Ohio river, gives to the proper County Court, the power of licensing ferries, but forbids a ferry to be established within a mile of another ferry, except on certain conditions, " where it may be necessary."

The court of appeals of Kentucky has often decided, that this was a discretionary power, confided in the County Courts, but that to grant or refuse a ferry affected private rights, that the discretion was a judicial one, and subject to review and control. *Carter vs. Kalfus*, 6 *Dana*, 43; *Harvie vs. Cammack*, 6 *Dana*, 243; *Kennedy vs Covington*, 8 *Dana*, 50.

W. BYERS, for appellant.

The privilege of keeping a ferry over a stream and taking toll therefor is not a riparian right, or incident to the land, but arises out of the license of the County Court.

The privilege of establishing a ferry, and taking tolls for the use of the same, is a franchise; and no one can establish a ferry without permission of the sovereign power. 3 *Kent's Com.* 458; *Stark vs. McGown*, 1 *N. M.*, 387; (Seé *U. S. Digest, vol.* 11, *p.* 423, article, *Ferry*; See 14, 15, 16;) *Stark vs. Miller*, 3 *Missouri*, 470; *Mills vs. County Commissioners*, 3 *Scam.* 53; 13 *Ill.* 27; *Dig. Stat. of Ark. chap.* 69, *sec.* 4.

Questions touching franchises, are to be examined upon the principles of reason, policy and justice, by the settled doctrines of the common low, in trusts, covenants and contracts between individuals. *The State vs. Real Estate Bank*, 5 *Ark.* 595; (See 599); 3 *Kent's Com.* 458, 459; *Handekoper's lessee vs. Douglass*, 3 *Cranch*, 1; (*Sec.* 1, *Peter's Con. Rep.* 453; *Mills vs. The county of St. Clair*, 2 *Gilman*, 197. ( See *page* 227.)

Lindsay has accepted the grant of the ferry franchise from the State, and has complied with all the requisites of the statute, regulating ferries and ferry privileges, owns and possesses

both banks of the river at said ferry, has always kept sufficient ferrymen and boats, and has regularly and annually obtained from the proper authority his ferry license, and has performed his contract in carrying over all persons and things at his ferry, with that despatch which the public convenience required; and he thereby has acquired vested rights and valuable interests in this ferry, which cannot be taken away by the Legislature.

The owners of all ferries under the statutes of Arkansas, have *prima facie* the exclusive privilege of ferrying, and receiving the toll for all persons and things carried over at their ferries, and within one mile above or below them; and they have that exclusive privilege, " except at or near cities or towns, where public convenience may require it, and satisfactory proof of the same shall be first adduced." *Dig. Stat. Ark. chap.* 69, *sec.* 20.

Then, as it has been shown that Lindsay had established and continued his ferry at Powhattan, for a long time before the appellee had had a ferry at his landing, within three-fourths of a mile of Lindsay's old ferry, before the appellee can legally establish a ferry at his landing, he must show—

1st. That it is at or near some city or town.

2d. That public convenience requires it.

If either of these requisites be wanting, the ferry cannot be established under the statute, and if established, it is in violation of the rights of the former ferry.

Has Lindsay chosen the proper remedy to protect his rights and redress his wrongs?

The jurisdiction of courts of equity over private nuisances is concurrent with, and in aid of courts of common law. The equitable jurisdiction is generally resorted to for the advantage it possesses, and the facilities it offers to complainants in restraining aggressions upon their vested rights; and in being able to give complainants an account of the profits. Perhaps there is no subject where the process of injunction is more efficacious, and, it may be added, more necessary. *Eden on Inj.*, *p.* 271; *Dan'l Pl. and Pr.*, *p.* 1857 *to* 1861, *and notes and authorities;*

*Campbell et al. vs. Poultney et al.*, 6 *Gill & John.* 94; *Putnam vs. Valentine et al.*, 5 *Ohio Rep.* 117.

So a court of equity will interfere by injunction where the remedy is doubtful or difficult, or to prevent a multiplicity of suits. *Conway, exparte*, 4 *Ark. R.* 302; *Gilbert vs. Mickle*, 4 *Sand. Ch. Rep.* 357.

ROSE & GIBBS, for appellee.

There is no error in the decree of the court below. There was no equity in the bill, and the matters therein set up gave the court no jurisdiction.

Chancery will not interfere by injunction unless the party applying therefor has a vested legal or equitable right, which may be greatly or irreparably injured by the acts sought to be restrained. 6 *J. C. R.* 46; 2 *Sto. Eq. Jur. sec.* 925; *Gates vs. Anderson*, 13 *Ill.* 425; *Bush vs. Peru Bridge Co.*, 3 *Porter's (Ind.) R.* 21; *Jones vs. Johnson*, 2 *Ala. N. S.* 746.

Under our statute no one can have an exclusive ferry privilege at or near a city or town. The County Courts may license as many ferries near such places as public convenience may require. *Dig. ch.* 69, *sec.* 20; 7 *Pick.* 344; 13 *Ill.* 413; *Lawless vs. Reefe*, 4 *Bibb* 309.

The Kentucky, Alabama, Indiana and Illinois statutes concerning ferries, are very much like ours, containing similar exceptions. *Moorehead & Brown's Dig.* 709; *Clay's Ala. Dig.* 514; *R. S. of Ind.* 302.

Under the Kentucky statute above referred to, it has been decided that the public convenience is the only limitation upon the power of the County Courts to establish ferries upon the Ohio river. 3 *J. J. M.* 668; 4 *Ib.* 30; 6 *Dana*, 43, 242; *Jones vs. Johnson*, 2 *Ala. (N. S.)* 746; 3 *Porter*, 21.

The remedy of Lindsay was at law, if he deemed himself injured.

After a ferry has been once established and licensed no further evidence about public convenience is required, nor need

the owner make any further application.  *Dig. chap.* 69, *secs.* 15, 16.

The court is bound every year to fix the tax to be paid on all ferry privileges; the Clerk issues the license, delivers it to the sheriff and the owner must pay for it.  *Ib. sec.* 17.

Then Lindley's ferry was established once for all in January, 1852.

Admit, as contended for appellant, that it is the office of a writ of certiorari only to cause illegal and irregular proceedings to be quashed when they are apparent upon the record, yet, in 1852-3-4, the evidence upon which the County Court found, and every fact and circumstance in the case were made a part of the record by means of Lindsay's bill of exceptions —as much a part of the record as any of the orders of the court.

The writ of certiorari, running from the Circuit Court to an inferior court, performs the same office that a writ of error from the Supreme to the Circuit Court.  *Carnall vs. Crawford county,* 6 *Eng.* 614.

By the bill of exceptions everything is placed upon the Circuit Court record.  The writ of error removes the cause, and the Supreme Court determines whether the Circuit Court has rightly declared the law arising from the facts as presented and the cause is affirmed or reversed, as justice may dictate.

So in case of certiorari from the Circuit to the County Court, the whole record, including the bill of exceptions, is brought up and upon a review of the same the proceedings are either affirmed or quashed.

We are convinced that the appellant has mistaken his forum in coming into a court of chancery, because:

1st. If there was no way by which the County Court proceedings could be reviewed, then appellant, according to the case much relied on by his counsel, has no remedy at all.  *Kennedy vs. Covington,* 8 *Dana,* 55.

2d. There is ample remedy at law by writ of *certiorari.*

3d. Chancery cannot grant the relief sought, unless it be on

the ground that Lindley's ferry is a nuisance. It cannot be a nuisance unless wholly unauthorized by law, and unless the proceedings of the County Court in the premises are not only erroneous and voidable, but absolutely *void*. The court did not transcend its jurisdiction, and therefore its proceedings are not *void*. Besides, chancery will not hold a matter complained of to be a nuisance, and enjoin it, unless the complainant's right has been previously established at law, or it be a strong and mischievous case of pressing necessity. In cases of the latter kind, it will only grant the injunction, until a trial can be had at law. 13 *Ves.* 220; 3 *J. C. R.* 282.

In this case there was no doubt; the trial at law was had, and the right of the appellee settled by it, two years before the injunction issued.

Mr. Justice COMPTON delivered the opinion of the Court.

Lindsay, the appellant, established a ferry across Black river, at the town of Powhatan, in Lawrence county, under a license from the County Court for that purpose.

After his ferry had been in operation for a number of years, Lindley, the appellee, applied to the County Court, at January term, 1852, for a license to establish a ferry across the same stream, near Powhatan, and within one mile of the ferry of the appellant.

The appellant voluntarily appeared in the County Court, made himself a party to the proceedings, and contested the grant of license to the appellee. The court, however, granted the license, and the ferry was established. The appellant then exhibited his bill in chancery, alleging that the establishment of the rival ferry was an illegal interference with his exclusive vested rights, as the owner of the previously established ferry, for the reason that the public convenience did not require its establishment.

On the final hearing, the court below dismissed the bill, and the cause was brought here by appeal.

The 20th section of the statute provides, that the County

Court " shall not permit any ferry to be established within one mile above or below any ferry previously established, except at or near cities and towns, where the public convenience may require it, and satisfactory proof of the same shall be first adduced." *Gould's Dig. chap.* 70 Now, whether the public convenience required the establishment of the rival ferry, was a question necessarily passed upon and determined by the County Court. The appellant, though under no legal obligation to appear before that tribunal, (*vide Murray vs. Menefee,* decided at present term,) nevertheless voluntarily did so, and made himself a party to the proceedings.

If the proceedings were erroneous, he should have pursued his legal remedy for their quashal, which was to put on the record by bill of exceptions, the evidence adduced on the trial, or so much thereof as was necessary to show the errors complained of, and then invoke the appellate jurisdiction of the Circuit Court by writ of *certiorari,* according to the doctrine laid down by this court in *Couch Ex parte,* 14 *Ark.* 337; *Carnall vs. Crawford county,* 6 *Eng.* 604.

Having failed to do this, the judgment of the County Court is conclusive, and the appellant cannot now be heard in a court of equity. True, the appellee, subsequent to the establishment of his ferry, and prior to the commencement of the proceedings in equity, by the appellant, to restrain him, obtained his annual license for the years 1853–4, when the appellant was not a party to the proceeding, nor present in the County Court, by voluntary appearance; but this can have no material bearing on the point under consideration—because, after the appellee's ferry was once established, the question of public convenience was no longer an open one between him and the appellant, subject to investigation on the occasion of each annual grant of license thereafter; nor, in such case, does the statute require the owner of a ferry privilege to make a further application. It is made the duty of the court to levy a tax on the privilege, annually, whether the owner makes application or not; the Clerk is required to issue the license, deliver it to the

sheriff, and the owner is bound to pay for it, vide *see* 15, *et seq.* Whether the County Court, from considerations affecting the general good alone, has the power under the statute to discontinue one or both of the ferries, is a question not before us, and one which we do not decide.   We mean to decide merely, that the question of public convenience, *for the purposes of this controversy,* was put forever at rest by the decision of the court, establishing the appellee's ferry.   When his ferry was once established, and its establishment became binding on the appellant, the ferries were not only rivals, but also *equals.*   The one owner could not afterwards insist that the ferry of the other should be discontinued, because the public convenience did not require both.

On a careful examination of the testimony in the cause, we have not been able to reach the conclusion that the license under which the appellee's ferry was established, was procured by fraud.

The decree of the court below must be affirmed with costs.

Mr. Justice RECTOR, dissenting.

I dissent from so much of the opinion in this cause as decides that the establishment of a ferry vests private rights in·a party, extending beyond the period limited in his license.

I hold that the question of public convenience recurs to the County Court annually.   The public franchise reverting to that tribunal to be enlarged, abridged, or modified in any way whatever, that the convenience and accommodation of the public may require.

One having a ferry has no investiture of right to the public franchise; but is only upon certain conditions permitted to use it exclusively for a given time, and by our statute, only for one year.