## BREARLY VS. NORRIS.

B. and those under whom he claimed, owning both banks of the river, had kept a
ferry, under proper licenses; but for *twenty years*, N. had kept a ferry, under
licenses, a short distance above the place where B. had kept it, and where he
owned both banks of the river, but for the same uses and at the crossing of the
same road: From the time N. took charge of the ferry B. procured no license, nor
exercised any ferry privilege: *Held*, That B. had relinquished his right, and that
N. was entitled to an exclusive right to keep the ferry.

Where a ferry had been kept by the husband in his life time, the landing of which
is on the farm attached to the mansion, and the widow's dower has not been
assigned, she is entitled to the ferry as appertaining to her possessory right.

*Appeal from Pope Circuit Court in Chancery.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

HOLLOWELL, for the appellant.

The granting a license to keep a ferry by the County Court
of the proper county, establishes such ferry, and the party to
whom such license is granted acquires in such ferry privilege a
private vested right. *Lindsay vs. Lindley*, 20 *Ark.* 573.

A ferry once established by order of the County Court be-
comes permanent, and the franchise under such order vests and
becomes absolute in, and belongs, as any other private property,
to the party to whom such license shall have been granted. It
is not necessary that the party in interest should make any
other application for license to keep such ferry, for his privilege
is annually taxed by the County Court, who issues regularly
once a year his license—places the same in the hands of the
proper officer who delivers it to the owner of the ferry, whose
duty it is to pay the taxes so levied. See *Gould's Digest, chap.*
70, *secs.* 7, 11, 15, 16, 17, 18, 19.

The ferry privilege having once vested and become a private
right, the party in interest must be divested of his estate therein,
before he is deprived of his interests, in some way sanctioned
by law. He must either make a voluntary conveyance of his
estate, or the judgment of a court of competent jurisdiction,

must be passed against him or some act of omission or com-
mission, by the party in interest, must so operate as to divest
his estate.

We hold, and respectfully submit, that so far as the doctrine
of *non user* extends it cannot affect, in the least, the rights of
appellant. The facts, as proven, taken in connection with the
pleadings, present no such state of case, as will in the most
remote degree induce the application of that doctrine in this
case to the prejudice of appellant, or to the advantage of
appellee. The ferry, it cannot even be remotely inferred from
the facts, was ever abandoned by appellant. We submit his
case in respect thereto, on the following authorities. 4 *J. J.
Marshall* 29; 5 *Whar. R.* 584; 23 *Pick.* 141; 3 *Kent's Com.*
359; 10 *Mass. R.* 183; 3 *Camp. R.* 514; 1 *Chit. Pr.* 284–85;
1 *Vesey, jr.* 6, 8; 2 *J. J. Marshall* 225.

Our next enquiry is, was there any forfeiture of said estate
by the order, judgment or decree of any court of competent
jurisdiction. The record no where shows any such state of
case, unless it shall be inferred from the fact that the license
granted to others than the rightful owners to keep such ferry,
operated *ipso facto* as a judgment of forfeiture. We submit
that the granting of such license could, in no possible way,
have such an effect, and that the only legitimate and autho-
rized course, having in view such forfeiture, would have been
by a direct proceeding for that purpose, against the party in
interest. *Brown vs. Given*, 5 *J. J. Marshall* 30; 1 *Dana* 260.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

Previous to 1836, Brearly, the appellant, and those under
whom he claims, had possession of the land on both sides of
the Arkansas river, a short distance below Norristown, and
under the proper licenses kept a ferry at the crossing of the
military road over the river. But from 1836 to 1856, Samuel
Norris kept a ferry which answered the same uses as that kept
by Brearly, being the crossing place for the same road, connect-

ing points on the banks near to each other, though the ferry of Norris was removed up the river so as to touch landings on each side of the river owned by himself. From the time Norris took charge of the ferry, Brearly did not procure license for his ferry, did not exercise any ferry privilege as appendant to his own land or possession, but he claims that the ferry of Norris was a continuation of the exercise of his own franchise, that he participated in its profits, and in its superintendence, so that he is not precluded from the independent use of his own former right of ferry, which, in 1857, he sought to make available by a license from the County Court of Yell county, in which the land upon the south side of the river lies.

Although the allegations and proofs of Mrs. Norris are meagre about the public authority by which Norris exercised the right of keeping a ferry, yet his use of the franchise during twenty years, is an established and conceded fact, and the cross-bill of Brearly shows that it was done under legal authority given to Norris himself. It is to be presumed that a ferry is kept by and for the person who has the license to keep it, and is responsible to the public, and to individuals for its safe and commodious keeping, yet if the claim of Brearly could be saved from abandonment by proof of the allegations in his answer and cross-bill, that he and Norris kept the ferry together, we think his claim unsustained by the evidence. For, although he introduces testimony in support of this branch of the case, it is not, at most, stronger than the testimony of Mrs. Norris, which proves that Samuel Norris had exclusive control and use of the ferry till his death, and exercised a right over it that was adverse to any other claim, and that Brearly, during the twenty years of the possession and use of the ferry by Norris as his own, did not interfere with the ferry except as he rented it from Norris in a particular year. Looking only at the parol evidence as conflicting upon this the main feature of the case, it is plainly not sufficient to establish the existence of Brearly's right as a continuing one from the time of his management of

the ferry before 1836, till his effort to renew its life by the Yell county license in 1857. In this state of the case, the fact of the license for the ferry being given from year to year to Norris is an important if not a controlling fact. And if we were in greater doubt than we are as to the real claim to, or ownership of the ferry right, while it was in name the right of Norris, we should not feel at liberty to overrule the decree of the court that affirmed the right of Norris, and dismissed the cross-bill. Therefore, admitting that Brearly did own a ferry right before the establishment of the ferry of Norris, or before his continuation of Brearly's ferry, we hold that Brearly relinquished his right; that Samuel Norris became entitled to an exclusive right to the ferry at Norristown, which, if well continued and exercised by Susan Norris, the appellee, is entitled to protection as an existing right paramount to that asserted by Brearly in 1857.

It is contended for Brearly that though his right was dormant while Norris kept the ferry, it is not thereby abandoned or forfeited. But an adverse holding of Brearly's private property, of his real estate, for twenty years, would deprive him of his title, or of the means of enforcing it; much more will this result from a neglect to use, or contend for a right which requires an annual recognition from the County Court. *Murray vs. Menefee*, 20 *Ark*. 564.

After the death of Samuel Norris, his widow, the appellee, kept up the ferry under license granted to her by the County Court of Pope county. The landing on the north side of the river is on the land upon which the mansion of her husband is situated, and she holds it as widow, no dower in the estate having yet been assigned to her. While entitled to the use of the mansion and farm attached to it, she is also entitled to the ferry as appertaining to her possessory right.

The exclusive control, the entire possession of the lands on each bank of the river by Samuel Norris, during his life time, notwithstanding Brearly's purchase of one bank at an execution sale with the money and for the benefit of Norris, and

notwithstanding the deed of gift from Norris of the other bank to his daughter, the wife of Brearly, with the fact that Mrs. Norris has never relinquished her right to dower, may be considered in this case as not giving Brearly any right to keep a ferry upon his own land on the southern bank of the river below the site where the ferry of Norris has been kept since 1836.

Mrs. Norris was in the possession of the ferry, as the successor of her husband, under a license from the County Court of Pope county, that including the northern bank of the river. When she obtained her license in 1857, Brearly opposed its issuance, but his opposition was overruled, when he obtained his own license from the County Court of Yell county, in which the land of Brearly on the south side of the river is situated. Mrs. Norris was not a party to this proceeding. The disturbance of her franchise under a grant from the authority of Yell county, is as great as if the license to Brearly had issued from the County Court of Pope county, and her right to relief in either case would be the same.

Upon Brearly's obtaining license in Yell county, and preparing to establish a ferry in pursuance thereof adjacent to the site of her own ferry, she filed a bill to enjoin him from the use of a ferry. He resisted her right by answer, asserted his own by a cross-bill. The court perpetuated the preliminary injunction awarded to Mrs. Norris, and dismissed Brearly's cross-bill, and we affirm its decree.