FERREL VS. WOODWARD.

*Acceptance of franchise conferred on two persons—Injunction.*

1. *It seems* that where a franchise is conferred upon two persons by an act of the legislature, it must be accepted by *both*, or the grant is inoperative.
2. A party claiming an exclusive right to maintain a ferry within certain limits, is not entitled to an injunction against another person maintaining a ferry in violation of such alleged right, where the evidence discloses such inattention to the business and gross neglect on the plaintiff's part as would warrant a court, in a proper proceeding, to declare his rights forfeited. He must be left to his action for damages, or be required first to establish in such an action his exclusive right.

APPEAL from the Circuit Court for *Grant* County.

In April, 1862, the legislature of this state passed an act (ch. 95, Pr. & L. Laws of 1862) which declares that H. J. Gleason and *John E. Ferrel*, their heirs &c., shall have the exclusive

right for ten years, of maintaining a power ferry across the Wisconsin river, on sec. 22 in town 8 north, of range 3 west, in Grant and Crawford counties. In July following, said *Ferrel* obtained from the board of supervisors of Crawford county a license "to keep a ferry, with exclusive privilege, across the waters of the Wisconsin river, extending along fractional section 22," in said town; said license to remain in force three years. In November following, he obtained from the board of supervisors of Grant county a license for three years, "to maintain a ferry across the Wisconsin river * * *, with the exclusive privilege and control of landing upon the fractional sections 22, 23 and 27" in the same town. In January, 1864, the board of supervisors of Crawford county granted to the defendant, *Woodward*, a license for three years, to maintain a ferry on the same river on lot 2 in section 22, and on the northeast quarter of the southwest quarter of section 23 in the same town. Chap. 408, Laws of 1864 (approved April 4th of that year), provides that "in all cases where a ferry charter has been or shall hereafter be granted, on the Wisconsin river, giving to any person or persons the exclusive right of ferriage, it shall not be lawful for any board or boards of supervisors to grant a license or licenses to any other person or persons other than such as own such charter, within one mile each way from the point or points designated for landing by said charter: *provided*, the person or persons owning said charter shall at all proper times keep and run a sufficient number of ferry boats to accommodate the wants of the public." In January, 1865, the board of supervisors of Grant county licensed the defendant for three years to maintain a ferry across said river, "to land on the northwest quarter of the southwest quarter of section 23, and the northeast quarter of the northeast quarter of section 22" in said town. The license recites that the board grants the same, "being satisfied that the owners of the *Ferrel* ferry, so called * * * do not at all proper times keep and run a sufficient number of boats to accommodate the wants of

the public, and that the public convenience requires another ferry" at that place. . *Woodward* commenced maintaining a ferry at that point in June, 1862, and continued the same until the commencement of this action, taking a large part of the custom. The court below found that " after this diversion the plaintiff became negligent of his business as a ferryman, to such an extent as might, perhaps, have justified a judgment of forfeiture against him in a proper proceeding for that purpose." It also found that " Gleason never accepted or acted under the legislative charter" above stated.

This action was brought by *Ferrel* to restrain *Woodward* from further maintaining his said ferry. The complaint also alleges that *Woodward* has derived profits from said ferry to the amount of $2,000, and asks judgment against him for that sum, &c. The circuit court granted an injunction; and the defendant appealed.

*S. U. Pinney*, for appellant, to the point that ch. 95, Pr. Laws of 1862, could not take effect until the franchise was accepted by *both* the persons therein named, and the bond required by law (R. S., ch. 20, sec. 5) given by both, cited *Bank of Augusta v. Earle*, 13 Peters, 595; *Munroe v. Thomas*, 5 Cal., 470; *Thomas v. Armstrong*, 7 id., 286; Ang. & A. on Corp., §§ 82–85; *Commonwealth v. Jarrett*, 7 S. & R., 460; *Harrison v. Trustees &c.*, 12 Mass., 460; *Jackson v. Bodle*, 20 Johns., 187; *Townson v. Tickell*, 3 Barn. & Ald., 31; *Treadwell v. Bulkley*, 4 Day, 395. 2. If there was an acceptance so as to make the grant operative, then the franchise was the property of both, and *Ferrel* cannot maintain this action without joining Gleason with him. Story's Eq. Pl., §§ 159, 358; *Allie v. Schmitz*, 17 Wis., 169. Counsel also argued that under art. 4, sec. 22 of the constitution of this state, the legislature might delegate to county boards of supervisors its power to so regulate ferries as to prevent the franchises previously granted for public purposes being made the means of defeating the objects of the grant, and that the license granted to the defendant by the supervi-

sors of Grant county, in 1865, was a sufficient answer to the complaint, both as to the legislative grant to the plaintiff, and as to the licenses previously granted to him by the county authorities. He also argued that under sec. 1, ch. 20, R. S., the supervisors were not authorized to divest themselves, by any exclusive license granted by them, of the power to license other ferries within any prescribed limits, whenever the public good should require the exercise of that jurisdiction : citing 23 How. (U. S.), 435 ; 16 id., 524 ; 13 Ill., 413 ; 9 Geo., 517 ; 3 Ind., 21 ; 5 Seld., 444.

*G. C. Hazelton,* for respondent, contended that *Ferrel's* acceptance of the charter from the state vested in him the exclusive right to maintain a ferry within the limits therein mentioned, and he thus acquired a vested right under contract with the state, which could not be taken away unless forfeited for misuser or non-user judicially ascertained. Hoffman's Pr. Rem., 205 ; 2 Hilliard on R. P., 43 ; Sedgw. on Stat. & Con. Law, 625 ; *Benson v. The Mayor &c.,* 10 Barb., 223.

Downer, J.   The evidence shows that Gleason never accepted the franchise from [the state. The grant was to Gleason and *Ferrel,* their heirs, executors, administrators or assigns. Could *Ferrel* alone accept a franchise granted to him and Gleason ? If the grant had been to more persons than two, perhaps a *majority* might have accepted. Still there are strong reasons that might be urged against such a construction. We know of no law, authority or doctrine for holding that a less number than a majority to whom a franchise is granted can accept it ; and we have been referred to none. If one person can accept of exclusive privileges conferred jointly by the legislature on him and another, we see no reason why, when any larger number of persons are invested with exclusive corporate franchises on condition of their accepting, any one may not accept, rightly exercise, hold, own and assign all the rights and franchises conferred upon the whole. It appears to us that the franchise

must have been accepted by both Gleason and *Ferrel*, or the grant was inoperative.  But if we are mistaken in this, the evidence does not show a case calling for the exercise of the powers of a court of equity.  If *Ferrel* had exclusive rights either under the act of the legislature or the license of the county board, the evidence clearly discloses such inattention to the business and gross neglect as would warrant a court, in a proper proceeding, to declare his rights forfeited.  *Woodward's* competition may have caused this.  But that is no excuse, certainly not a valid one, where the public interest is involved.  If he would invoke the aid of a court by the extraordinary remedy of injunction and receiver, he should have kept and operated a ferry that would at all times have accommodated the public. If he had the exclusive right he claims, when *Woodward* first infringed upon that right, he could have enjoined him, if he had first fulfilled the conditions of the grant to himself.  But he so neglected his own ferry that *Woodward's* ferry became a public necessity.  Under these circumstances, he should be left to his personal action for damages, or be required first in such action to establish his exclusive right.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint.