### Bell *v.* Clegg.

The ownership of the soil on a navigable stream does not necessarily entitle the owner to a public ferry franchise. He can exercise no such privilege until the right to do so is conferred by the proper authority.

The provisions of the statute providing for the collection of an annual tax on ferry privileges, which have been granted, must not be understood as denying to the county court the power to discontinue a ferry franchise when the public interest demands it. *Lindsay v. Lindley,* *20 Ark., 573*—does not assert the contrary.

A., being the owner of the north bank of the river, obtained a license to keep a ferry. B., the owner of the south bank, having previously obtained a license to keep a ferry at the same place, leased the ferry privilege of A. for five years. At the expiration of the lease, the county court refused to renew the grant to A., but did so afterwards. Whereupon, A. filed a bill claiming one-half of the profits of B.'s ferry from the time of the expiration of the lease until the renewal of the grant. *Held:* That the bill was properly dismissed.

*Quere.* Where rival ferries are in operation at the same place, established on opposite banks of the river, has the owner of one ferry the right to take passengers from the bank on which the ferry of the other is established?

*Appeal from Arkansas Circuit Court in Chancery.*

Hon. William M. Harrison, Circuit Judge.

Clark, Williams & Martin, for appellant.

When the county court established Roane's ferry privilege

and granted him a license, the franchise was established, and became a vested right and interest, and did not cease to exist upon the mere failure or refusal of the county court to renew the license. *Lindsay v. Lindley, 20 Ark., 573.* Roane had a vested interest in the franchise, which was property, and was, unquestionably, within the protection of law. And Clegg having used it, up to the filing of the bill, and having received and appropriated to himself all the profits, was liable to account to Roane for it.

RICE, for appellee.

COMPTON, J.

This cause comes before us on appeal from the chancery side of the Jefferson circuit court.

The material allegations of the bill may be stated, substantially, as follows: In January, 1853, the complainant became the owner and took possession of the north bank of the Arkansas river, opposite the city of Pine Bluff, where the public road crosses said stream. Prior to January, 1853, a public ferry from the south bank of the river was established, at the before-mentioned crossing, under a license granted by the county court to the owner of the south bank, and was put into operation, whereby the said owner and those claiming under him enjoyed, and continued to enjoy, under an annual grant of license for that purpose, exclusive ferry privileges, until the 1st of January, 1857, when the county court granted to the complainant a license to keep a public ferry from the north bank of the river, at the same point ; whereupon, the defendant, who was then the owner of the south bank, and whose ferry had been previously established, leased from the complainant his ferry privilege for the term of five years, commencing the 1st day of January, 1857. At the expiration of the lease—in January, 1862—the county court, on application of the complainant, refused to grant him a license for the further exercise

of ferry privileges. In January, 1866, the complainant again obtained a license. The defendant, in the mean time, continued to keep his own ferry in operation, taking on passengers from the north as well as the south bank of the river, and appropriated the entire receipts to his own use.

The bill claims that the complainant is entitled to one-half of the profits arising from the operation of the defendant's ferry, from 1st of January, 1862, to 1st of January, 1866—being the period between the termination of the lease and the reïssuance of license to the complainant—and prays that the same may be decreed to him.

On demurrer the bill was dismissed for want of equity.

In support of the claim of the appellant, it is insisted that, by reason of his proprietorship and possession of the north bank of the river, and the grant to him of a license in January, 1857, he was entitled, thenceforward, to equal ferry privileges with the appellee, at the point indicated, notwithstanding the county court refused to issue him a license in January, 1862; and that the defendant, by transporting passengers from the north bank of the river, used the privilege of the complainant, for which he ought to account. We do not assent to this proposition. The ownership of the soil does not necessarily entitle the owner to a public ferry franchise. He can exercise no such privilege until the right to do so is conferred by the proper authority. This court said, in *Murray v. Menefee, 20 Ark., 561*, that "a ferry franchise is the creature of sovereign power, and no one can exercise it without the consent of the State." This is too well settled by the authorities to admit of discussion. The Legislature, with a view to the public convenience, has conferred on the county court the power to grant ferry privileges. By the 7th and 11th sections of the act, it is provided that any person wishing to establish a ferry, shall apply to the county court, and on showing that he is in possession of the land where the ferry is sought to be established, and that its establishment will promote the public convenience, the court shall grant him a license for the term of one year. Sections 15, 16

and 17 provide that when the license has been so granted, and the ferry once established, it shall be the duty of the county court to levy a tax on the privilege annually thereafter, whether application for a renewal of the license be made or not; and that it shall be the duty of the clerk to issue, annually, a license, and deliver it to the sheriff, for the person to whom the privilege was granted; who, on presentation of the license, is bound to pay for it. These last-mentioned sections of the act, and others immediately following, relate more especially to the mode of taxing the privilege, and must not be understood as denying to the county court the power to discontinue a ferry franchise when the public interest demands it. In *Lindsay v. Lindley*, *20 Ark.*, *573*, it was decided that where two public ferries had been established at the same place, the question of public convenience was no longer an open one between the owners of the respective ferries, subject to investigation on the occasion of each annual grant of license therefor; or, in other words, that the one owner could not afterwards insist that the ferry of the other should be discontinued because the public convenience did not require both. But in that case, the court distinctly waived any expression of opinion as to whether the county court, from considerations affecting the general good alone, had the power, under the statute, to discontinue one or both of the ferries, no such question being then before the court. The question, however, is now presented, and we do not hesitate to hold that the county court, when the public welfare requires it, undoubtedly has the power to discontinue a ferry franchise, by refusing the annual license for its further exercise. Why, or under what circumstances, the court refused to issue a license to the appellant, we are not informed; nor is it material to inquire, since the decision of the county court, however erroneous, could not be reviewed in this proceeding. The appellant, when he obtained a license, in January, 1857, did not establish and put in operation a ferry at the place designated, but leased his mere naked right to do so to the appellee, who already owned a ferry at the same point; and this right, upon

the termination of the lease, ceased to exist, by action of the county court, leaving no foundation for any claim whatever against the appellee. Besides, we are. not prepared to admit, that, where rival ferries are in operation at the same place, and on opposite sides of the river, the owner of the one has no right, under our statute, to take passengers from the bank on which the other is established. A fair construction of the statute would seem to lead to a different conclusion; but as a decision upon this point is not necessary to a determination of the case before us, the question is left open.

Decree affirmed.