## WILLARD vs. FORSYTHE et al.

A license to keep and maintain a ferry, under chapter 26, of *Compiled Laws*, is a personal trust, and is not assignable.

To entitle the licensee to an injunction against one who is running upon the route of such a licensee, he must have kept and operated a ferry in conformity with the requirements of his license.

The bond required by the licensee is a condition precedent to the enjoyment of any right under such license, and *it seems* that the giving and approval of such bond must be alleged in the bill of complaint.

*Bay Circuit, July, 1871.*

*Maxwell & Hyde,* for Complainant.

*Luther Beckwith,* for Defendants.

Motion for dissolution of injunction.

*By the Court,* GRIER, J.—It is alleged in the bill of complaint that on the 27th day of January, 1866, the Board of Supervisors of Bay County, under and by virtue of chapter 26, of *Compiled Laws,* granted to Christopher McDowell, since deceased, a license to run and maintain a ferry across the Saginaw River between Portsmouth and Salzburg. That thereupon said McDowell entered upon the use of the franchises and rights so granted to him, and built and maintained docks, boats, and other things necessary to such use.— That in the year 1869, said McDowell died, and his executors on the 12th day of May, 1870, sold and conveyed to the complainant said license and all the rights secured thereby, and that since then complainant has kept and maintained said ferry.

The bill further alleges that on or about the 1st day of January, 1871, the Common Council of Bay City assumed to itself authority over said ferry and granted to defendant Forsythe a license to run a ferry on the route of the complainant, and that said Forsythe is now running a ferry, and charging and receiving fare and tolls thereon to the great injury and damage of complainant. An injunction against the running and maintaining of the ferry of defendant Forsythe is prayed for. On an *ex parte* application a preliminary injunction was granted by the Circuit Judge.

The answer of defendant Forsythe admits the granting of a li-

WILLARD vs. FORSYTHE et. al.

cense to McDowell, but denies that the executors had any power to convey the same to complainant. It denies that a ferry has been kept and maintained in compliance with the conditions of the license, and alleges and proves by the affidavits supporting the answer that complainant has violated said conditions by frequently failing to run the ferry for the accommodation of the public, and that thereby great inconvenience has been suffered. It is further alleged and proven that the Common Council under its amended charter of 1869, granted to defendant Forsythe a license to run a ferry on the route of the ferry granted to McDowell, and that under his license said Forsythe has run a ferry for the accommodation of the public, and that in consequence of the neglect of complainant such ferry is necessary.

The defendant Forsythe now moves the Court for a dissolution of the injunction upon bill and answer.

Is the license to McDowell assignable? If not, complainant acquired no rights by his purchase from the executors. To ascertain whether the license in question was the subject of sale, it will be necessary to examine the statute under which it was granted. Under that statute the Board of Supervisors may grant licenses for keeping ferries " to as many *suitable* persons as they may think proper." Such licenses shall continue in force for a time to be specified therein not exceeding ten years. No such license shall be granted to any person other than the owner of the land through which the highway adjoining the ferry shall run, unless such owners shall in writing consent thereto, or shall neglect to apply for such license after notice, as provided in the statute. The person applying must before any license can be granted to him, execute a bond to be approved by the Board, conditioned that HE *will faithfully keep and attend* such ferry with such and so many convenient boats, &c., as the said Board shall direct. Every person who shall violate such bond shall be guilty of a misdemeanor and subject to a fine upon conviction thereof. It is further provided that if *any person* shall use any such ferry unless authorized in the *manner directed* in that chapter, such person shall be deemed guilty of a misdemeanor.

It will thus be observed that before a license can be granted by the Board they must pass judicially upon the *suitability* of the applicant. Although their action upon the question is not subject to

review by any other tribunal, yet the provision referred to is for that reason no less a prohibition against their granting a license to any person who does not possess the fitness required. But this prohibition is deprived of all signifcance, if the licensee upon being pronounced *suitable* may at his pleasure transfer his license to any person that he may choose without any exercise of the judgment of the Board upon the fitness of the transferee to execute the duties required. The judgment and discretion required to be exercised by the Board in examining and solemnly adjudicating upon the qualifications of the person to whom it is granted, would seem somewhat farcical if the license in legal effect runs to bearer, and is valid in favor of any holder thereof without any check upon its assignability.

Again, the right or franchise conferred by the license, like a railroad, is an additional servitude not contemplated by the proprietor of the land when he dedicated the highway to the public, and cannot be granted to any person but such proprietor without his consent, or by such neglect to apply for a license as is deemed equivalent to consent. In this case the proprietors did *consent that a license might be issued to McDowell*, but they cannot be presumed to have thereby consented that it might be granted or conveyed to complainant. Knowing the qualifications of McDowell to exercise the trust, they were entirely satisfied with his selection, and consented thereto ; but can that consent, by operation of law, broaden into an assent to the exercise of such important duties by the highest bidder at an executor's sale ?

The very condition of the bond is in effect a covenant upon the part of the licensee that he will personally continue to keep and attend the ferry. His selection having been by law based upon his fitness, *this condition of the bond was intended to secure* to the public the services of the identical person selected. But if the license may be immediately assigned to any person at the will of the licensee without the consent of the Board, or of the proprietor of the shores, it follows that the condition of the bond may in effect be lawfully violated. By a transfer of the license it is put beyond the power of him to whom it was granted to any longer in any way control the ferry, and he thereby renders himself incapable to " faithfully keep and attend such ferry." If then the license may be lawfully sold, the result is a solecism that can hardly be tolerated by

any reasonable system of jurisprudence, *i. e.* one may lawfully do that which is a violation of the conditions created by the same law which conferred the right.

The statute makes any violation of the bond a misdemeanor.— The person to whom the license is assigned cannot violate the bond for he is not a party to it. The person to whom it was originally granted cannot be held to have been guilty of a misdemeanor for an act performed by the transferee, a person not at all under his control. It results then that for any misuse after the sale of the license there can be no prosecution under this provision, and the same is rendered entirely inoperative unless it is held that the sale is in itself a violation of the bond, in which case it is a misdemeanor. It will hardly be contended that a misdemeanor may be lawfully committed.

Again, as has been shown, the use of any ferry is absolutely prohibited " unless authorized in *the manner* directed in this chapter.'› A use under a right acquired by purchase is not directed in that chapter, and the right to such a use is in no way intimated. It follows that such a use comes within the prohibition.

The conclusion would seem to be inevitable that a license granted under this statute was intended to vest nothing more than a mere trust personal to the individual selected by the Board, and that such right cannot be assigned. This conclusion is deemed to be the only one consistent with the stringent restrictions of the statute

Another insurmountable objection exists against granting the relief prayed for. It clearly appears from the answer and affidavits that the conditions of the license have not been complied with by the complainant, and that his neglect to faithfully keep and attend the ferry, has made such a ferry as that maintained by defendant Forsythe a public necessity. While it is probable that such a misuser will not of itself, without some direct adjudication of forfeiture on a competent court enable the title of the licensee to be attacked collaterally, yet if he would invoke the aid of the Court by the extraordinary remedy of injunction, he must have kept and operated a ferry that would at all times have accommodated the public. *Ferrell vs. Woodward*, 20 *Wis.*, 458. This is but an application of the familiar rule, that he who seeks equity must do equity.

The statute makes the bond a condition precedent to the grant-

ing of the license. The jurisdiction to grant it depends as much upon the bond as upon the consent of the proprietor of the shores. This being the case it would seem that the bill of complaint must allege the execution and proper approval of such a bond, which the bill in this case has failed to do.

The injunction is dissolved, with costs to defendant.