## FINLEY v. SHEMWELL.

Opinion delivered March 14, 1910.

1. FERRIES—RIGHT TO OPERATE.—While ownership of lands on one or both sides of a navigable stream entitles the owner to the privilege of keeping a public ferry, the right cannot be exercised without procuring a license from the county court. (Page 193.)

2. SAME—EXCLUSIVENESS OF PRIVILEGE.—When the county court has once granted the privilege of keeping a public ferry, the privilege is exclusive within the distance, so long as it is exercised under the annual grant of license provided for. (Page 193.)

3. SAME—ABANDONMENT.—A ferry privilege may be abandoned by failure to procure a renewal of the license from the county court, and the county court may, by proper order, discontinue a ferry once established. (Page 193.)

4. SAME—INFRINGEMENT—REMEDY.—One whose ferry privileges have been infringed by the grant of a ferry license to another is not bound

by the order of the county court granting such license, but may invoke the aid of a court of equity for redress. (Page 194.)

5. SAME—HOW ESTABLISHMENT PROVED.—The repeated issuance of annual licenses to the keeper of a ferry by the clerk of the county court makes out a *prima facie* case of establishment of the ferry by the county court. (Page 194.)

6. SAME—INJUNCTION AGAINST INFRINGEMENT— CONSTRUCTION.—A decree enjoining defendant from operating a ferry within one mile of plaintiff's ferry does not enjoin the operation of such a ferry after plaintiff's ferry is abandoned or discontinued by order of the county court. (Page 194.)

Appeal from Clay Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*F. G. Taylor,* for appellant.

1. Appellee had no legally established ferry or ferry privilege. A license from the county court is a prerequisite. Kirby's Digest, § § 3555, 3561, 3575; 20 Ark. 561; 25 Ark. 26.

2. Pierce could not transfer his ferry franchise without transferring his land or an interest therein. 26 Ark. 464; 41 Ark. 202.

3. No notice was given to parties interested. 19 Cyc. 498; 84 Ark. 21; 20 Ark. 21.

4. The remedy at law was adequate, and no irreparable injury was proved. 65 Ark. 413.

5. It was error to make the injunction *perpetual,* for ferry franchises may be discontinued by the county court at the expiration of one year.

*G. B. Oliver,* for appellee.

1. The granting of a license is proof of a ferry franchise. Kirby's Dig., § 3561; 1 Greenl. on Ev., § 79; 19 Cyc. 499g. No one except the State can question the license. 19 Cyc. 505 (2); *Id.* 493 (2); 48 Ark. 321. The privilege is exclusive. Kirby's Dig., § 3575; 20 Ark. 561; 19 Cyc. 495b.

2. The license to appellant was void, and the injunction proper. 20 Ark. 561. The decree for damages is amply sustained by the evidence.

*F. G. Taylor,* in reply, for appellant.

The failure to procure a license from the county court, authorizing appellee to remove the ferry or establish one at the

present site, renders the license void. 66 Ark. 535. The record of any court can be contradicted and made to speak the truth. 86 Ark. 591.

McCULLOCH, C. J. This appeal involves a controversy between two rival ferry keepers, operating ferries within a mile of each other on Current River, in Clay County. Shemwell, the plaintiff, instituted this suit in the chancery court of Clay County to restrain Finley from infringing upon his (plaintiff's) ferry rights by wrongfully operating a ferry within one mile of his ferry, and to recover damages for the infringement. Upon final hearing of the case, the chancery court granted the relief prayed for and rendered a decree perpetually enjoining defendant Finley from operating a public ferry within one mile of plaintiff's ferry, and for the recovery of $60 damages.

The facts established by a preponderance of the evidence are as follows: About fifteen years ago, or longer, one John Williams, who owned land on both sides of Current River, began the operation of a ferry and procured a license from the county court permitting him to do so. This was continued for several years, but finally he ceased operating the ferry, and did not do so for five or six years, or perhaps longer. Another public ferry was operated by one Pierce several miles down the river, and after Williams ceased the operation of his ferry Pierce moved his ferry up the river to a point about three-quarters of a mile above the old Williams ferry. He operated the ferry there under a license issued to him by the county court of Clay County, and continued to do so until he sold it to a man named Stackhouse, who in turn sold to the plaintiff Shemwell, who owned land on one side of the river. Shemwell purchased the ferry in the fall of 1901, after the operation of the Williams ferry had been abandoned, and has continued to operate the same under licenses issued to him annually by the county court, up to the trial of this cause. While so operating this ferry, Williams, who still owned land on both sides of the river a short distance below Shemwell's ferry, undertook to put his ferry in operation again, and Shemwell brought some kind of an action against him, which was settled by compromise, and Williams ceased operation. He then sold his land to Finley, who, in December, 1906, without the knowledge or consent of Shemwell, obtained a ferry license from the county court of

Clay County and began operating his ferry, which, as already shown, was within a mile of Shemwell's ferry.

The statutes of this State provide that "all ferries upon or over any public navigable stream shall be deemed public ferries," and that "every person owning the land fronting on any public navigable stream shall be entitled to the privilege of keeping a public ferry over or across such navigable stream." Kirby's Dig., § § 3555, 3556. The statute further provides that "any person wishing to establish a ferry across any navigable stream shall apply to the county court of the county in which such ferry site may be; and, on the applicant showing that he is lawfully in possession of such land as the ferry is sought to be established on, and also satisfying the court that the public convenience will be promoted thereby, such court shall grant such license." (Sec. 3561). Another provision of the statute bearing on the present controversy reads as follows: "The county court shall not permit any ferry to be established within one mile above or below any ferry previously established, except at or near cities and towns, where the public convenience may require it, and satisfactory proof of the same shall be first adduced." (Sec. 3575).

It is settled by the decisions of this court that, while ownership of lands on one or both sides of a navigable stream entitles the owner to the privilege of keeping a public ferry, the right can not be exercised without procuring a license from the county court. *Murray* v. *Menefee,* 20 Ark. 561; *Bell* v. *Clegg,* 25 Ark. 26; *Haynes* v. *Wells,* 26 Ark. 464; *Little Rock & Fort Smith Ry. Co.* v. *McGehee,* 41 Ark. 202.

It has also been decided by this court that when the county court has once granted the privilege of keeping a public ferry the privilege is exclusive within the distance, so long as it is exercised under the annual grant of license provided for. *Murray* v. *Menefee, supra; Lindsay* v. *Lindley,* 20 Ark. 573. There may, however, be an abandonment of the ferry privilege by failure to procure the license prescribed by statute; or the county court may, by proper order, discontinue a ferry once established. *Brearly* v. *Norris,* 23 Ark. 514; *Bell* v. *Clegg, supra.*

The Williams ferry was the first one established, but, according to the evidence in this case, Williams abandoned it, and the field was then open for any other owner of land fronting on

the river to establish his ferry by obtaining a license. This was done by Shemwell's predecessors, and his rights were preserved from year to year by procuring the license from the county court. Any attempt thereafter on the part of Williams or his grantees to exercise ferry rights was an infringement upon the rights of Shemwell; and it has been held by this court that under such circumstances the one whose ferry privileges have been infringed is not bound by the order of the county court granting a license to another, but may invoke the aid of a court of chancery for redress. *Murray* v. *Menefee, supra; Brearly* v. *Norris, supra.*

As this place was not at or near a city or town, it was beyond the power of the county court to license another ferry within a mile of one which had already been established and licensed.

It is insisted that plaintiff failed to prove that his ferry had been established by an order of the county court. The repeated issuance of annual licenses to plaintiff by the clerk of the county court, as is proved in this case, is sufficient to make out a *prima facie* case of establishment by the county court of a ferry.

It is also contended that the decree is too broad, in perpetually enjoining defendant from operating a ferry within one mile of appellee's ferry. If this decree should be construed to mean that defendant is enjoined from operating his ferry even after the plaintiff's ferry should be abandoned by the owner, or discontinued by order of the county court, then indeed it would be too broad. But we do not so construe the decree, which we understand to mean that defendant is merely enjoined from infringing upon plaintiff's exclusive ferry privileges, so long as he exercises it under authority from the county court. So construing the decree, it is correct.

We find that the decree of the chancellor, both as to the plaintiff's rights and the amount of damages to which he is entitled, is correct, and the same is in all things affirmed.