CRANE v. JACKSON.

Opinion delivered January 4, 1915.

1. FERRIES—RIGHT TO OPERATE—EXCLUSIVENESS.—Ownership of lands on both sides of a navigable stream entitles the owner to the privilege of operating a ferry under license from the county court, and when the county court has once granted the privilege of keeping a public ferry, the privilege is exclusive within the distance so long as it is exercised under the annual grant of license provided for.

2. FERRIES—INFRINGEMENT OF RIGHT—REMEDY.—One whose ferry privilege has been infringed is not bound by the order of the county court, granting license to a rival, but may invoke the aid of a court of chancery for redress.

3. APPEAL AND ERROR—FAILURE TO ABSTRACT—PRESUMPTION.—Where the appellant failed to abstract the testimony in support of his contention on an issue of fact, it will be assumed on appeal that appellee's contention upon the facts is sustained by the evidence.

4. FERRIES—ABANDONMENT.—Where a ferryman fails to provide adequate service for the needs of the community, he will be held to have temporarily abandoned the ferry, to the extent that he is not entitled to equitable relief to restrain others from operating a ferry to meet the needs of the community.

Appeal from Conway Chancery Court; *John E. Martineau*, Chancellor on Exchange; affirmed.

*U. L. Meade* and *Mehaffy, Reid & Mehaffy*, for appellant.

1. When the county court has once granted the privilege of keeping a public ferry, the privilege is exclusive within the distance prescribed by the statute, so long as it is exercised under the annual grant of license. 20 Ark. 561-3; 23 *Id.* 514; 36 *Id.* 467. There is no evidence of abandonment. 94 Ark. 192; 20 *Id.* 573; 95 *Id.* 466; *Ib.* 353.

2. Injunction is the proper remedy and damages should be recovered. 88 Ark. 330; 44 *Id.* 189; 52 *Id.* 90.

3. A forfeiture can only be enforced by the State. Failure to pay the license or violation of the statutory regulations is no defense to an action against one operating a rival ferry for infringement. 12 A. & E. Enc. Law 1104; 2 Kan. 198; 19 Ind. 315; 59 S. W. 526; 36 Ark. 466; 52 *Id.* 90.

*Sellers & Sellers,* for appellees.

1. Petit Jean is not a navigable stream. Kirby's Dig. § 3555; 39 Ark. 409.

2. Appellant had no legal authority to operate a public ferry. Kirby's Dig. § 355-8-9, 3565-6; 25 Ark. 26; 94 *Id.* 193; 51 *Id.* 235; 52 *Id.* 63. But if he had he lost the right by nonuser and abandonment.

3. Appellees merely had a private crossing and charged no tolls. 44 Ark. 184; 67 S. E. 814.

4. Failure to furnish the public necessary and safe ferry privileges deprives a ferry licensee of the right to injunction. 19 Cyc. 505; 94 Ark. 193; 52 *Id.* 61; 5 Cal. 47; 2 Pom., Eq. Rem., § 583; 12 A. & E. Enc. (2 ed.) 1106; 33 Ark. 304; 23 *Id.* 493; 53 *Id.* 150; 67 *Id.* 238; 74 *Id.* 252.

5. He who comes into equity must come with clean hands. 215 Fed. 168; 169 S. W. 257; 111 Fed. 287; 113 Am. St. 507; 66 S. W. 161; 2 L. R. A. 368, and notes.

McCulloch, C. J. Appellant, L. J. Crane, has for many years owned lands on both sides of the Petit Jean River at a crossing where the river constitutes the boundary line between the counties of Yell and Conway, and since the year 1899 he has operated a ferry under license annually granted to him by the county court of each of

said counties. That is to say, he has procured a license from each county until the year 1910, and thereafter from the county court of Yell County, but no license was issued to him for the years 1910 or 1911 by the county court of Conway County, though he made application therefor. On August 6, 1911, the county court of Conway County granted a license to George McGowan & Co., alleged to be a partnership composed of seventy-five or eighty residents of that locality, including appellees, to operate a ferry within one mile of the crossing where appellant's ferry was operated. This is an action instituted by appellant against appellees to enjoin them from operating the ferry, alleging that the operation thereof was an infringement upon appellant's rights. The case was heard by the chancellor upon the pleadings and depositions of numerous witnesses and there was a decree dismissing the complaint for want of equity.

(1-2) It is well established by the decisions of this court that ownership of lands on both sides of a navigable stream entitles the owner to the privilege of keeping a ferry under license from the county court, and that "when the county court has once granted the privilege of keeping a public ferry the privilege is exclusive within the distance so long as it is exercised under the annual grant of license provided for." *Murray* v. *Menefee,* 20 Ark. 561; *Lindsay* v. *Lindley,* 20 Ark. 573; *Finley* v. *Shemwell,* 94 Ark. 190. Those cases also settled the proposition that one whose ferry privilege has been infringed is not bound by the order of the county court granting license to a rival, but may invoke the aid of a court of chancery for redress. In this state of the law, it is clear from the record in this case that appellant's right to exercise ferry privileges are superior to those of the appellees, and there is nothing to show an abandonment of the privilege.

(3-4) It is contended, however, by appellees that they took out ferry license and are operating a ferry merely for their own convenience, and that they are doing this from necessity because of the fact that appellant fails

to give adequate accommodations and that his ferry boat is so out of repair that it is dangerous to attempt to cross on it. The abstract furnished by appellant is so meager— in fact, there is no abstract at all of the evidence—that we must assume that the appellees' contention upon the facts, with reference to the lack of service given by appellant and the unsafe condition of the boat, is sustained by the evidence, and, that being true, appellant is in no position to ask for equitable relief. While, as before stated, the evidence does not show an abandonment on appellant's part of his ferry rights, still the same principle controls in a case where he, by his own derelictions, makes it necessary for travelers to make some other provision for crossing, and in that case he is not in a position to ask for equitable relief. His failure to discharge his duty as ferryman, which makes it necessary for others to seek another means of crossing, is in effect a temporary abandonment to the extent that it calls for a denial of any equitable relief. For, as long as he refuses to ferry travelers across the river, or, what is the same thing, fails to provide adequate means for doing so, he can not ask a court of equity to restrain another from doing that which he fails or refuses himself to do. Therefore, from the meager record in this case, we assume that the decree of the chancellor was based upon a prependerance of the evidence on this issue and that the same is correct.

Decree affirmed.