## Dunbar v. Johnson et al.

May 8, 1942.

582

M. J. Sternberg and E. C. Moore for appellant.

L. C. Lawrence and Charles F. Montgomery for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellant is the owner of land on the north side of the Cumberland River opposite the Jamestown-Monticello Highway in Russell County, and of a franchise to operate a public ferry across the river at that point. The appellees who owned and rented farms abutting upon the Highway on the south bank of the river, maintained a boat, and, after that was lost, a skiff, for the joint use of themselves, their tenants and employees. The appellee, Lawrence, is a practicing physician, and at the time this suit was instituted by appellant, August, 1935, was a partner with the appellee, Johnson, in the raising, buying, and selling of livestock. The object of the suit was to enjoin the appellees from operating the boat referred to, and to recover $151.15, representing the tolls allegedly lost to appellant through its operation. The gravamen of the complaint was the infringement by appellees of appellant's exclusive franchise through their maintenance and operation of a public ferry "within a mile above and a mile below said crossing site." On August 8, 1939, a restraining order was issued by the Clerk, and thereafter, a contempt rule was issued against the appellee, Johnson, for its alleged violation. The disposition of the contempt proceedings and of a motion to discharge the temporary restraining order was postponed until a

trial could be had upon the merits, which resulted in the dismissal of the petition, coupled with a requirement that the appellee, Johnson, pay the court costs incurred subsequent to the service of the restraining order as a penalty for its violation.

The quantity of proof taken and the variety of questions discussed by counsel in their briefs, present an opportunity, were we inclined to embrace it, to burden the Bar with a dissertation upon the law governing ferry franchises and their infringement; but we are not so disposed since the rights conferred are fixed by Kentucky Statute, Section 1820, and what does and does not constitute an infringement is fully stated in the cases of Warren et al. v. Tanner et al., Ky., 56 S. W. 167, 49 L. R. A. 248, and Hatten et al. v. Turman, 123 Ky. 844, 97 S. W. 770, 98 S. W. 1000. The pertinent rule to be deduced from these authorities is that while a number of persons may not combine and hire a common ferryman, share the expense, and thus establish for themselves a ferry, nevertheless, a private individual may, at any place along the river, keep his private boat, and ferry his family, servants, and goods, and "occasionally lend his boat to another, or ferry with himself a friend, in both cases without compensation" [56 S. W. 168, 49 L. R. A. 248]. Sometimes the test is whether a fee or reward is paid directly or indirectly by the person transported. American Jurisprudence, Volume 22, Section 33, Page 573. The general rule is well stated in Corpus Juris, Volume 25, Page 1066:

> "It is not an infringement for persons to use their own boats within the limits of a ferry franchise in crossing themselves, their families, employees, guests, and occasionally others, where no tolls are charged. But any attempt to operate a private ferry within such limits for the accommodation of any considerable portion of the general public is an infringement."

In some jurisdictions it has been held that irrespective of any other question, the owner of a ferry franchise cannot maintain an action to enjoin its infringement if it is shown, in defense of the action, that the franchise owner did not provide adequate facilities or operate his ferry efficiently so as to serve the interest of the traveling public. Crane v. Jackson, 116 Ark. 100, 172 S. W. 890; Ferrel v. Woodward, 20 Wis. 458. This is under

the doctrine that one must invoke the aid of equity with clean hands.

But in this case we need not consider, either factually or legally, the contention that appellant failed to properly operate his ferry, or the failure of appellant to show that appellees operated their boat, or later their skiff, for fee or reward. It is sufficient to say that while the proof indicated that appellees had transported across the river persons not within the category of those whom they had the right to transport in their private boat, under the authorities cited, such instances were sporadic, and on each such occasion, according to the appellees, appellant's facilities were not available and the person ferried was instructed to pay appellant the ferriage fee. Both appellees denied emphatically that they had ever charged or authorized the charging of a fee; and, from the testimony as a whole, we are convinced that the ferry which they are charged with maintaining was no more than a boat, later a skiff, which they provided for their own personal convenience and business necessities, and the occasional accommodation of their employees or tenants without fee or reward. At least the appellant failed to satisfactorily prove the contrary, and while the Chancellor who presided did not write an opinion, we are unwilling, on the record presented, to disturb his finding that the petition should be dismissed.

Appellant fears that an affirmance of the judgment appealed from would constitute an adjudication that he had failed to furnish adequate facilities to the public, and thus, possibly, throw the door open to all others who desire to operate a ferry within the limits of his franchise. We do not so hold. Neither have we extended the rule announced in Warren et al. v. Tanner et al., supra, that persons may not combine and establish for themselves a ferry by hiring a common ferryman and sharing the expense. That rule, however, contemplates a combination for the purpose of operating a ferry. Here the only combination was a previously formed partnership for dealing in livestock, and the partnership's use of the subsequently acquired boat was a mere incident to the combination—not its objective.

Neither are we disposed to interfere with the Chancellor's requirement that the appellee, Johnson, pay the costs incurred subsequent to the service upon him of the restraining order. Though Johnson did no more

after its issuance than he had previously done, and the Chancellor expressly held that the restraining order should not have been issued, it was Johnson's duty to obey the order so long as it was in force, and the Chancellor was within his rights in imposing a penalty for its violation, which, however, should have been a fine and not a benefit conferred upon appellant.

Judgment affirmed on both the original and cross-appeal.